**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CARY PEETE,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>GLOBAL SECURITY SERVICES, LLC,<br>and ROBERT L. CURRY,<br><br>Defendants/Counter-Claimants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:26-cv-02201-TLP-tmp |

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**

Plaintiff Cary Peete sued here under the Fair Labor Standards Act ("FLSA") seeking compensation from Defendants Robert L. Curry and Global Security Services, LLC ("GSS"). (ECF No. 1.) Congress enacted the FLSA to protect "workers from substandard wages and oppressive working hours." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Seeking this protection, Plaintiff claims that Defendants pursued a "deliberate payroll scheme" to avoid "overtime premiums and payroll tax obligations." (ECF No. 1 at PageID 1.) And Defendants thus allegedly denied him overtime compensation. (*Id.* at PageID 6.) In their Answer, Defendants asserted a counterclaim against Plaintiff, who moves to dismiss them. (ECF No. 12 at PageID 37; ECF No. 15-1 at PageID 49.) Plaintiff further moves to amend the Complaint, but Defendant opposes that Motion. (ECF Nos. 26, 29.)

The Court provides factual, procedural, and legal background in turn. And then it explains why it grants both Plaintiff's Motion to Dismiss and his Motion for Leave to Amend.

## BACKGROUND

The Court first recounts Plaintiff's "well-pleaded factual allegations." *Paris v. MacAllister Machinery Co., Inc.*, 175 F.4th 787 (6th Cir. 2026). Defendant GSS is a Tennessee LLC whose owner and managing member is Defendant Curry. (ECF No. 1 at PageID 2.)

Defendants had employed Plaintiff since around 2012. (*Id.*) He worked as an Operations Manager since around 2015 and received an hourly rate of $21.35. (*Id.* at PageID 3.) In his role, Plaintiff managed around ninety security employees. (*Id.*) And over the past three years, he averaged around seventy-five hours per week of "recorded, on-the-clock work" and an "additional" thirty-five hours per week of "required managerial work off the clock." (*Id.*)

So Plaintiff "routinely work[ed] well in excess of forty hours in a workweek and ha[d] worked as many as approximately one hundred ten recorded hours in a single week." (*Id.*) It seems like Plaintiff "simultaneously perform[ed]" these duties, so it is unclear how many of the thirty-five "additional" weekly hours overlapped with his seventy-five weekly hours but he worked as much as 110 "recorded" hours in a week. (*See id.*)

His "off-the-clock" hours lasted from 5:00 a.m. to 12:00 p.m. on weekdays; and during those hours, he performed managerial tasks for Defendants, monitored attendance, and arranged coverage. (*Id.*) Defendants did not "record" the time Plaintiff spent on these duties or "compensate him" for it. (*Id.* at PageID 4.) They paid him "for the first forty hours in a workweek via payroll with standard withholdings"; for further hours, they made "separate payments" at his "straight-time rate and treat[ed] those hours as '1099' compensation." (*Id.*)

Each year, Defendants issued Plaintiff "both a Form W-2 (reflecting only the first forty hours per week) and a Form 1099 (reflecting overtime hours)." (*Id.*) But Plaintiff claimed to "perform[] all work as an *employee* of Defendants." (*Id.* (emphasis added).) And he asserts that he did not "operate an independent business," "bear entrepreneurial risk," or "submit invoices,"

and he "perform[ed] work integral to Defendants' core operations." (*Id.*) He "never signed an independent contractor agreement" or "any other contract reflecting independent contractor status." (*Id.*)

Defendant Curry fixed Plaintiff's hourly rate, processed the payroll, and approved payments. (*Id.*) Curry and his spouse performed administrative and payroll-related functions for GSS. (*Id.*) And Curry determined the "method of compensation," authorized the "issuance of Forms W-2 and 1099," and "set Plaintiff's rate of pay, hire(d) and fire(d) employees, and control(led) work schedules." (*Id.*) Curry was "aware that Plaintiff routinely work[ed] in excess of forty" weekly hours but still "approve[d] payment at straight time for overtime hours." (*Id.*)

A few weeks before Plaintiff sued on February 26, 2026, he informed Curry that he believed he had been "placed back on a 1099 pay structure"; so he "requested to be paid entirely through payroll."[1] (*Id.*) Curry responded that Plaintiff "had never been taken off 1099 status." (*Id.* at PageID 5.) And "if Plaintiff wanted the compensation structure changed," "Curry would need to re-examine Plaintiff's overtime hours." (*Id.*)

A "prior Department of Labor investigation" addressed "overtime compensation" at GSS. (*Id.*) It resulted in other employees' conversion to "W-2 status" and required GSS to "pay back wages." (*Id.*) But Defendants still paid Plaintiff through "W-2 payments for the first forty" hours and "1099 payments for additional hours." (*Id.*)

Plaintiff alleges that Curry then emailed him reprimands for "clocking in during morning duties that Defendants previously required him to perform off the clock." (*Id.*) After the Department of Labor's investigation and "resulting back-wage payments," "Defendants knew or

[1] These allegations suggest that Plaintiff believed he had been removed from a "1099 pay structure," but he makes no such allegations. (*See id.*)

showed reckless disregard for whether their compensation practices complied with the FLSA." (*Id.*) So Plaintiff alleges that Defendants' violations were "willful within the meaning of 29 U.S.C. § 255(a)." (*Id.*) Put differently, they were aware of their "obligations under the FLSA" but still undertook these "compensation practices." (*Id.*)

On February 26, 2026, Plaintiff sued here asserting two Counts under the FLSA: one for failure to pay overtime compensation and one for failure to pay all hours worked. (*Id.* at PageID 6.) As for Count I, "Failure to Pay Overtime (FLSA)," Plaintiff alleges that Defendants "failed to pay" him "one and one-half times his regular rate for hours worked over forty" "in a workweek." (*Id.*) And Defendants' "practice of compensating overtime hours through separate '1099' payments constitutes a scheme to evade overtime obligations under 29 U.S.C. § 207." (*Id.*) Issuing Form 1099 payments for overtime hours, Plaintiff alleges, "does not relieve" Defendants of obligations under the FLSA. (*Id.*) So Defendants are allegedly "liable for unpaid overtime compensation" based on 29 U.S.C. § 216(b). (*Id.*)

To support Count II, Plaintiff asserts that Defendants made him "perform compensable work off the clock." (*Id.*) And they "failed to record and compensate" him "for all hours worked," and their "requirement" that he perform "early-morning managerial duties without compensation constitutes a failure to pay for all hours worked." So Plaintiff alleges that Defendants are also liable "for unpaid wages and liquidated damages." (*Id.*) As a result, Plaintiff requests "unpaid overtime compensation" and "unpaid wages" for all hours he worked. (*Id.*) And he seeks an "equal amount as liquidated damages" under 29 U.S.C. § 216(b), reasonable attorneys' fees, and pre- and post-judgment interest." (*Id.* at PageID 6–7.)

Defendants answered the Complaint. (ECF No. 12.) In their Answer, they argue that the Court should dismiss the Complaint based on Federal Rule of Civil Procedure 12(b)(6), that the

statute of limitations bars "some or all" of Plaintiff's claims, that Plaintiff's "own negligence" caused his damages, and ten other defenses. (*Id.* at PageID 30–31.) After addressing Plaintiff's allegations, Defendants asserted a counterclaim alleging that they overpaid Plaintiff "for hours not actually worked" given his "frolics" in violation of company policy. (*Id.* at PageID 36.) Defendants assert that they had "reprimand[ed]" Plaintiff for his "frolics," but Plaintiff "continue[d] this practice." (*Id.*)

So by accepting "compensation for such hours," Plaintiff allegedly engaged in "fraud, misrepresentation, unjust enrichment, breach of contract, breach of company policy[,] and conversion." (*Id.* at PageID 37.) Defendants request that the Court award damages, including overpayment of wages and "contract services," pre-judgment interest, and more. (*Id.*)

Plaintiff then moved the Court to dismiss Defendants' Counter-Complaint based on Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15-1 at PageID 42.) He seeks dismissal of their counterclaims[2] on the grounds that their "allegations are conclusory and lack the factual specificity required" under Rule 8. (*Id.* at PageID 46.)

Because Defendants possibly asserted claims based on fraud, Plaintiff also argues that Rule 9(b) "requires particularized allegations." (*Id.*) But Defendants identified no "specific false statement, the time or pay period when it was made, the person who made it," or other details. (*Id.*) Plaintiff thoroughly explains why each potential counterclaim, whether breach of contract or breach of "company policy," fails. (*Id.* at PageID 46–47.)

---

[2] While Defendants hastily list possible grounds for liability, the Court agrees with Plaintiff that a Complaint must provide "fair notice of the claim and the grounds upon which it rests"; here, the Counter-Complaint is lacking. (ECF No. 15-1 at PageID 46.) It is unclear what counterclaims Defendants assert because they do not describe with any detail, factual or legal, why Plaintiff is liable for "fraud, misrepresentation, unjust enrichment, breach of contract, breach of company policy and conversion." (*See* ECF No. 12 at PageID 37.) Nor do Defendants explain whether "fraud" and "misrepresentation" are one claim or two. (*See id.*)

Defendants responded in opposition to Plaintiff's Motion to Dismiss. (ECF No. 18-1 at PageID 56.) They acknowledge at the outset that Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (*Id.* (citation modified).) Defendants also claim that under Rule 8, "[s]pecific facts are not necessary; the [pleading's] statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (*Id.* at PageID 56–57.)

So they insist that dismissal is "inappropriate" because they "placed" Plaintiff "on clear and plain notice of the nature of the claims against him." (*Id.* at PageID 59.) As for Rule 9(b), Defendants declare that they "have done what is required": they identified "the allegedly fraudulent actions," Plaintiff "as the wrongdoer," "when and where the wrongful actions occurred," and "what made the action fraudulent." (*Id.* at PageID 59–60.)

Defendants then turn to each counterclaim's viability. (*See id.* at PageID 60.) They claim that a contract existed between Plaintiff and GSS and that the breach of company policy claim is part of the breach of contract claim. (*Id.* at PageID 60–61.) The breach of company policy claim would also "be part of the unjust enrichment claim." (*Id.* at PageID 61 n.1.) Confusingly, Defendants challenge Plaintiff's "quantification of a conversion claim." (*Id.* at PageID 61.) They also note that they "pled" the "elements of unjust enrichment" and a "basis for a punitive damages assessment." (*Id.* at PageID 62–63.)

Defendants argue that even if a complaint is "deficiently pled," the Court should "freely give leave to amend pleadings when justice so requires." (*Id.* at PageID 63.) Plaintiff replied to Defendants' Response. (ECF No. 19.) He emphasizes that "new allegations" in the Response "cannot be considered on a Rule 12(b)(6) motion," and that the "Counter-Complaint consists of seven short paragraphs." (*Id.* at PageID 67.)

In August 2026, Plaintiff moved to amend or correct the Complaint. (ECF No. 26.) He explains that on July 27, 2026, Defendants "terminated" his employment. (*Id.* at PageID 83.) And he asserts that Defendants did so after Plaintiff "filed this action" in February *and* after Plaintiff declined Defendants' "demand that he resign or dismiss his claims." (*Id.*) Plaintiff also notes that his counsel warned Defendants that terminating him on those grounds "would constitute unlawful retaliation." (*Id.*)

So Plaintiff seeks to "add[] a single claim for retaliation under 29 U.S.C. § 215(a)(3) arising from that termination." (*Id.*) He notes that his proposed amendment would not affect Plaintiff's "existing FLSA claims." (*Id.*) Indeed, Plaintiff's proposed First Amended Complaint provides new factual background. So the Court next recounts Plaintiff's proposed allegations.

He claims Defendants were "aware of Plaintiff's protected" filing of this action in February 2026. (*See* ECF No. 26-2 at PageID 96.) But on July 10, 2026, Defendants communicated to Plaintiff that "his employment would be terminated." (*Id.*) In "the same communication," they "offered him the alternative of resigning" and proposed that he "dismiss his FLSA claims in exchange for Defendants' withdrawal of their counterclaim," all "under the same deadline." (*Id.*)

Plaintiff's counsel "notified Defendants in writing that any adverse action taken against him because he filed this action, pursued his FLSA rights, declined to resign, or declined to dismiss his claims would constitute unlawful retaliation." (*Id.*) And Plaintiff neither resigned nor dismissed his FLSA claims. (*Id.*) So on July 27, 2026, "days after Plaintiff declined Defendants' demands," Curry notified Plaintiff that he was "terminated effective immediately." (*Id.* at PageID 97.)

Plaintiff asserts that "Defendants terminated [his] employment because he engaged in

protected activity" by filing and prosecuting this action, pursuing his FLSA rights, declining to resign, and declining to dismiss his claims. (*Id.*) And given his termination, he has suffered "lost wages and benefits." (*Id.*) After providing this background, Plaintiff's proposed First Amended Complaint advances Count III, "Retaliation (FLSA, 29 U.S.C. § 215(a)(3))." (*Id.* at PageID 98.)

Plaintiff first cites that subsection, which "makes it unlawful for any person to discharge or in any other manner discriminate against an employee because the employee has filed a complaint or instituted a proceeding under or related to the FLSA." (*Id.*) And he then explains that his filing and prosecuting this action, or "pursuing his FLSA rights," and declining to dismiss his claims were "protected activity." (*Id.*) He proposes to allege that Defendants "knew of Plaintiff's protected activity." (*Id.*) A "causal connection" existed between Plaintiff's "protected activity" and Defendants' "adverse employment action," or termination of Plaintiff's employment. (*Id.*) "The termination followed closely upon Plaintiff's refusal to resign or dismiss his claims, and Defendants had conditioned Plaintiff's continued employment on the abandonment of those claims." (*Id.*) Plaintiff also claims that Curry is "individually liable as an employer" under the FLSA. (*Id.*)

In his Motion to Amend or Correct the Complaint, Plaintiff cites Federal Rule of Civil Procedure 15(a)(2) to urge the Court to "give leave" because his proposed amendment is timely, it is not futile, it causes no prejudice, and Plaintiff pursues it in good faith. (ECF No. 26-1 at PageID 87–89 (citation modified).)

Defendants responded in opposition. (ECF No. 29.) They claim that Plaintiff attempts to "transform a wage-and-hour dispute into a retaliation and wrongful termination case without pleading facts that make causation or pretext plausible." (*Id.* at PageID 105.) And they argue

that Plaintiff's proposed amendment alleges causation in merely conclusory terms. (*Id.* at PageID 106; *see also* ECF No. 30 at PageID 129.)

Defendants' argument, at its core, is that Rule 15(a)(2) "expressly permits denial where the proposed amendment would be futile," so the Court should deny Plaintiff's Motion because allowing him to add a claim "would serve no purpose." (ECF No. 30 at PageID 134.) In his Reply, Plaintiff argued that Defendants showed "neither futility nor undue prejudice," so the Court should grant leave to amend. (ECF No. 33 at PageID 144.)

## LEGAL STANDARDS

Rule 8(a) "requires that a plaintiff's complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Westerling v. E. Tenn. Children's Hosp. Ass'n, Inc.*, No. 25-5744, 2026 WL 674286, at *1 (6th Cir. Mar. 10, 2026) (citing Fed. R. Civ. P. 8(a)(2)). In *Ashcroft v. Iqbal*, the Supreme Court interpreted this standard to require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To evaluate whether a plaintiff has plausibly pleaded a claim, the Court must "take as true well-pleaded factual allegations in the operative complaint." *Paris*, 175 F.4th at 795. And it must construe the Counter-Complaint in the light most favorable to the plaintiff while drawing all reasonable inferences in his favor. *See Segrist v. Bank of N.Y. Mellon for Certificateholders of CWABS, Inc. Asset-Backed Certificates Series 2003-2*, 744 F. App'x 932, 935 (6th Cir. 2018).

Yet at this stage, the Court also requires a complaint to include factual allegations. *Fisher v. Dodson*, 451 F. App'x 500, 501 (6th Cir. 2011). It must specifically "contain either direct or inferential allegations respecting all material elements necessary for recovery under a

viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (citation modified); *accord Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019).

Rule 15(a) provides that "leave to amend 'shall be freely given when justice so requires.'" *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). The Court has discretion, within bounds, to grant or deny such a request. *Id.* "In the absence of any apparent or declared reason," "the leave sought should, as the rules require, be 'freely given.'" *Forman v. Davis*, 371 U.S. 178, 182 (1962).

Those reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment," and "futility of the amendment." *Id.* Courts must "consider the competing interests of the parties and likelihood of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). "To deny a motion to amend," the Court must find "some significant showing of prejudice to the opponent." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citation modified).

The Parties focus on whether the amendment is futile. *See Rose*, 203 F.3d at 420. A "proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* Importantly, though, the "test for futility" is not a question of "whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile *only* if it could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* at 421.

## ANALYSIS

Defendants' Counter-Complaint failed to include "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *See D'Ambrosio*, 747 F.3d at 383 (citation modified). And Plaintiff's proposed amendment to the Complaint is not futile. *See Rose*, 203 F.3d at 420.

The Court therefore **GRANTS** Plaintiff's Motion to Dismiss Defendants' Counter-Complaint and **GRANTS** Plaintiff's Motion for Leave to Amend his Complaint.

### I. Motion to Dismiss Counter-Complaint

The Court finds that each of Defendants' counterclaims rest on razor-thin factual allegations and mere legal labels. And so the Court will dismiss the counterclaims. Defendants make four brief statements of fact. (ECF No. 12 at PageID 36.) For example, their "payroll records" include "employee 'clock rings'" that "show unauthorized time." (*Id.*) Without clarifying what "this" is referring to, Defendants assert "This resulted in [Defendants'] overpayment to [Plaintiff] for hours not actually worked." (*Id.*) Defendants also allege that Plaintiff engaged in "frolics" "in direct violation of company policy." (*Id.*) And despite "reprimands," Plaintiff "continue[d] this practice." (*Id.*)

Based on those lone factual grounds, Defendants claim that Plaintiff is liable for "fraud, misrepresentation, unjust enrichment, breach of contract, breach of company policy," or "conversion." (*Id.* at PageID 37.) Plaintiff counters that these allegations are "conclusory" and thus insufficient. (ECF No. 15-1 at PageID 44.) Defendants then note that "[s]pecific facts are not necessary." (ECF No. 18-1 at PageID 56–57 (citation modified).)

The Court concludes that Defendants failed to state any counterclaims. First, their allegations do not "contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." *See Ashcroft*, 556 U.S. at 678 (citation modified). That is because these allegations amount to bare conclusions that Defendants overpaid Plaintiff because he frolics. (*Compare id.*, *with* ECF No. 12 at PageID 36.) Even at this early stage, the Court requires factual allegations for a complaint to survive, so Defendants' conclusions devoid of *any* factual detail cannot sustain their counterclaims. *See Fisher*, 451 F. App'x at 501.

And the Counter-Complaint strikingly includes no allegations about *any* legal element. (ECF No. 12 at PageID 36–37.) It should come as no surprise that a complaint must "contain either direct or inferential allegations respecting *all* material elements necessary for recovery under a viable legal theory." *See D'Ambrosio*, 747 F.3d at 383 (emphasis added) (citation modified).

Defendants hastily listed both real and questionable legal theories and now ask the Court to sustain their counterclaims. (ECF No. 12 at PageID 37.) For instance, Defendants fail to explain how their "fraud" and "misrepresentation" counterclaims differ. (*See id.*) And Defendants concede that the "breach of contract" and "breach of company policy" claims are the same. (ECF No. 18-1 at PageID 60–61.) But even setting these issues aside, the Court finds that Defendants just named causes of action without "direct or inferential allegations" respecting any of their "material elements." *See D'Ambrosio*, 737 F.3d at 383 (citation modified). That cannot suffice. *Id.* Both Plaintiff and Defendants also argue about whether the counterclaims sounding in fraud survive Rule 9's heightened pleading standard. So the Court addresses the issue.

Claims of fraud pose "a high risk of abusive litigation." *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation modified). So a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." *Id.* (citing Fed. R. Civ. P. 9(b)). The party must "specify the allegedly fraudulent statements," "identify the

speaker," "plead when and where the statements were made," and "explain what made the statements fraudulent." *Id.* And it must "plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation plausible on its face." *Id.* (citation modified).

Defendants attempted to press "fraud" and "misrepresentation" counterclaims. (ECF No. 12 at PageID 37.) But much like Defendants' other counterclaims, they include no specific factual allegations addressing "material elements." *See D'Ambrosio*, 737 F.3d at 383 (citation modified). So if those counterclaims fail to state a claim under Rule 8's lenient standard, then they likely fail to satisfy Rule 9's stringent demands. *Compare Ashcroft*, 556 U.S. at 678 ("Rule 8 . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (citation modified)), *with Republic Bank & Tr. Co.*, 683 F.3d at 247 (a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake" (citation modified)).

And Defendants' counterclaims here fail Rule 9's test. Defendants simply failed to plead their fraud claims with particularity. (*See* ECF No. 12 at PageID 37.) As explained, both the "fraud" and "misrepresentation" claims rest on four brief factual allegations. (*See id.* at PageID 36–37.) As an initial matter, a logical gap separates Rule 9(b)'s requirements and these allegations. Fraud often concerns a misleading statement or act, so *Republic Bank & Trust Co.* discusses Rule 9(b)'s requirements in terms of "allegedly fraudulent statements" and "when and where" they were made. *Republic Bank & Tr. Co.*, 683 F.3d at 247. This language does not easily map onto Defendants' allegations. (*See* ECF No. 12 at PageID 36.)

But even assuming Defendants' allegations fit Rule 9(b)'s framework, these allegations failed to state with particularity the circumstances of Plaintiff's frolics or acceptance of compensation. (*See* ECF No. 12 at PageID 36–37.) Defendants failed to explain how his

"frolics" or acceptance of "compensation" occurred "in direct violation of company policy." (*Id.*) They did not "explain what made the statements fraudulent." *Republic Bank & Tr. Co.*, 683 F.3d at 247. And they did not even gesture to Plaintiff's "mental state." (*See id.*; *see also* ECF No. 12 at PageID 36–37.)

In sum, each counterclaim fails to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft*, 556 U.S. at 678 (citation modified). They stand on no "direct or inferential allegations" respecting *any* "material element[]." *See D'Ambrosio*, 737 F.3d at 383 (citation modified). And as for Plaintiff's "fraud" and "misrepresentation" claims, they also fail under Rule 9(b). *See Republic Bank & Tr. Co.*, 683 F.3d at 247. The Court dismisses these claims and rejects Defendants' requests for relief, including punitive damages. (*See* ECF No. 12 at PageID 37.)

Yet the Court declines to dismiss any counterclaim with prejudice because none is "incurably defective." (*Cf.* ECF No. 15-1 at PageID 48.) So the Court dismisses each counterclaim without prejudice; they could be "saved by an amendment," though with difficulty. *See Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.* (6th Cir. 2021).

**II. Motion for Leave to Amend Complaint**

Plaintiff moves to amend his Complaint to assert Count III but Defendant claims that the "proposed amendment would be futile." (ECF No. 30 at PageID 134.) So the Court first explains why Plaintiff's allegations in Count III "could" survive a Rule 12(b)(6) motion. *See Rose*, 203 F.3d at 421. And it explains why the amendment would not prejudice Defendants and justice requires the Court to grant leave to amend. *See Rose*, 203 F.3d at 420.

The Court finds that Count III, as proposed, is not "futile." *See Rose*, 203 F.3d at 421. To show why, the Court discusses the FLSA's anti-retaliation provision. And it concludes that

Plaintiff seeks to allege "sufficient factual matter" that, "accepted as true," could "state a claim to relief that is plausible on its face." *See Ashcroft*, 556 U.S. at 678 (citation modified).

The FLSA's "anti-retaliation provision" prohibits an employer from "discharging or in any other manner discriminating against an employee because such employee has filed a complaint or instituted . . . any proceeding under the FLSA." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (citation modified); *see also* 29 U.S.C. § 215(a)(3). While claims of FLSA retaliation are "subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*," that framework applies at the summary judgment stage. *See Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 529–30 (6th Cir. 2011).

So when "courts address Rule 12(b)(6) motions to dismiss federal employment discrimination claims, the ordinary rules for assessing the sufficiency of a complaint apply." *Wedding v. Madisonville Health & Rehabilitation, LLC*, No. 25-6050, 2026 WL 2970294, at *4 (6th Cir. Oct. 2, 2026) (citation modified). Defendants are therefore mistaken to insist that the Court require Plaintiff to "plead a prima facie case of FLSA retaliation" to show Count III is viable. (*See id.*; *see, e.g.*, ECF No. 30 at PageID 130 ("Plaintiff's allegations do not provide facts demonstrating that Defendants' stated reason for termination—time theft in violation of company policy—was false or pretextual.").

Rather than ask whether Plaintiff pleaded a "prima facie case of FLSA retaliation," the Court must evaluate whether he pleaded the elements "found in the statute[]" itself. *See Wedding*, 2026 WL 2970294, at *4. Here that means analyzing "whether a complaint, construed in the light most favorable to the plaintiff employee, contains sufficient facts to support a reasonable inference that 'any person' 'discriminate[d] against' the plaintiff because she 'filed any complaint or instituted or caused to be instituted any proceeding under or related to' the

FLSA." *Id.* (citing 29 U.S.C. § 215(a)(3)).

Plaintiff's proposed allegations in Count III offer "sufficient facts" to support that inference. *See id.* The FLSA's anti-retaliation provision bars an employer from "discharging . . . an employee" because he filed a complaint under the FLSA. *Adair*, 452 F.3d at 489 (citation modified). Plaintiff asserted that Defendants fired him after making him decide whether he would resign and retract his claims. (ECF No. 26-2 at PageID 96–97.) So Plaintiff could allege an adverse employment action. *See Adair*, 452 F.3d at 490.

And second, the Court finds that Plaintiff proposes to allege that Defendants discharged him *because* he sued them under the FLSA. *See Wedding*, 2026 WL 2970294, at *4. Defendants knew he engaged in "protected" activity by suing here. (ECF No. 26-2 at PageID 96.) They communicated to him on July 10 that, to avoid termination, he could resign. (*Id.*) And in that "same communication," they offered him the chance to "dismiss his FLSA claims in exchange for Defendants' withdrawal of their counterclaim." (*Id.*) Defendants gave Plaintiff one deadline by which to decide whether to resign and whether to dismiss his FLSA claims. (*Id.*) But Plaintiff declined to resign or dismiss his claims, so Defendants fired him on July 27, "days after Plaintiff declined Defendants' demands." (*Id.* at PageID 97.)

Although Plaintiff need not make out a prima facie case at the pleading stage, these proposed allegations have enough "evidence of retaliatory conduct." *See, e.g.*, *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 506 (6th Cir. 2014) (citation modified) ("Montell's allegation is that . . . Day presented her with an ultimatum that she should resign or else he would fire her.").

While Plaintiff sued Defendants in February and they made their demands about his resignation or termination on July 10, Defendants allegedly mentioned his FLSA claims and

even tried to dissuade him from pursuing this suit. (ECF No. 26-2 at PageID 96–97.) So "temporal proximity" alone may not always suffice to show causation, but Plaintiff could thus allege "other evidence of retaliatory conduct": threats of termination and of counterclaims conditioned on prosecuting his FLSA suit. *See Montell*, 757 F.3d at 506 (citation modified). Plaintiff could thus show that Defendants discharged him because he asserted FLSA claims against them. (ECF No. 26-2 at PageID 98; *see also Wedding*, 2026 WL 2970294, at *4.)

Defendants claim that they terminated Plaintiff "for time theft," urge the Court to see their attached exhibit, and stress that "Plaintiff's proposed amendment does not plead facts showing that this reason was pretextual." (ECF No. 29 at PageID 106.) But each of these concerns misses the mark. At this stage the Court asks whether Count III is "futile" as proposed by evaluating whether it "could" survive a Rule 12(b)(6) motion. *See Rose*, 203 F.3d at 421. Sixth Circuit law does not require Plaintiff to grapple with *McDonnell Douglas* burden-shifting at the dismissal stage. *See Wedding*, 2026 WL 2970294, at *4.

The Court thus assesses whether Plaintiff proposed to plead the elements "found in the statute[]" itself. *See id.* He did. *See* 29 U.S.C. § 215(a)(3). Questions of "pretext[]" have no place in this analysis. (*Cf.* ECF No. 29 at PageID 106–07; ECF No. 30 at PageID 130, 132–33.) So the Court finds that Count III "could" survive a Rule 12(b)(6) motion and Plaintiff's proposal is not "futile." *See Rose*, 203 F.3d at 421. Defendants spend no time explaining whether Plaintiff's proposed amendment would prejudice them. (*See* ECF No. 30 at PageID 125–35.)

Yet the Court has found no evidence that allowing Plaintiff to include an FLSA retaliation claim would be unfair to Defendants or, as they hastily suggest, "unnecessarily expand the scope of this litigation." (*Cf. id.* at PageID 135.) But denying Plaintiff leave to amend his Complaint could deprive him of an opportunity to recover for an allegedly retaliatory

discharge. (*See* ECF No. 26-2 at PageID 96–97.) For these reasons, the Court also finds that justice requires the Court to grant Plaintiff leave to amend. *See Rose*, 203 F.3d at 420.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Plaintiff's Motion to Dismiss and **DISMISSES** Defendants' counterclaims without prejudice. The Court also **GRANTS** Plaintiff's Motion for Leave to Amend his Complaint and **ORDERS** him to file his First Amended Complaint.

**SO ORDERED**, this 2nd day of November, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE